*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANTONETTE R. GRANT, also known as
ANTONETTE R. NEWSOM,

UNPUBLISHED
March 11, 2025
12:35 PM

        Plaintiff/Counterdefendant-Appellee,

v

No. 371283
Wayne Circuit Court
LC No. 23-103022-DM

AL TROY GRANT,

        Defendant/Counterplaintiff-Appellant.

Before: MURRAY, P.J., and K. F. KELLY and D. H. SAWYER*, JJ.

PER CURIAM.

In this domestic-relations matter, defendant appeals as of right the trial court's judgment of divorce awarding plaintiff sole physical and legal custody of the minor children and the entirety of the marital property. We affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

Plaintiff and defendant were married in 2011 and share four biological children. Plaintiff filed for divorce in 2023, and defendant counterclaimed for divorce. Plaintiff argued that she should receive sole physical and legal custody of the three minor children because defendant was abusive, did not contribute to the marriage, and had a poor relationship with the children. With respect to property issues, plaintiff contended that she bought the marital home in Detroit with funds from her student loans and the home was in her name. She argued defendant purchased vacant property in Jamaica using her bank card. On several occasions plaintiff left with the children, moving to Tennessee and Texas, while defendant continued to reside in the Detroit home.

After a trial where the parties and defendant's adult son, Sha'Ron Blanks, testified, the trial court granted plaintiff sole legal and physical custody of the children, ordered supervised parenting

---

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

time for defendant under plaintiff's discretion, and awarded plaintiff the Detroit and Jamaica properties, but all associated debt for the properties to defendant. This appeal followed.[1]

## II. BEST INTERESTS

Defendant argues that the trial court erred when it found that it was in the children's best interests to award plaintiff sole legal and physical custody.

## A. STANDARD OF REVIEW

This Court applies "three standards of review in custody cases. The great weight of the evidence standard applies to all findings of fact. A trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction." *Vodvarka v Grasmeyer*, 259 Mich App 499, 507; 675 NW2d 847 (2003) (quotation marks and citation omitted). "An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions." *Id*. at 507-508 (quotation marks and citation omitted). "Questions of law are reviewed for clear legal error." *Id*. at 508 (quotation marks and citation omitted). "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

"The Child Custody Act (CCA), MCL 722.21 *et seq*., governs custody, parenting time, and child support issues for minor children in Michigan, and it is the exclusive means of pursuing child custody rights." *Barretta v Zhitkov*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 364921 and 365078); slip op at 6 (quotation marks and citation omitted). Under the CCA, "a trial court is required to determine whether there is an established custodial environment with one or both parents before making *any* custody determination." *Kessler v Kessler*, 295 Mich App 54, 61; 811 NW2d 39 (2011); see also MCL 722.27. The trial court found, and the parties do not dispute, that the established custodial environment of the children was with plaintiff.

After finding an established custodial environment, "[a] trial court must consider the factors outlined in MCL 722.23 in determining a custody arrangement in the best interests of the children involved." *Bofysil v Bofysil*, 332 Mich App 232, 244; 956 NW2d 544 (2020). The best interest factors are contained in MCL 722.23(a)-(*l*). "A trial court's findings regarding each best interests factor are reviewed under the great weight of the evidence standard." *Bofysil*, 332 Mich App at 245 (quotation marks and citation omitted). Defendant specifically challenges the trial court's findings related to factors (d), (f), (i), (j), and (k).

"Factor (d) is properly addressed by considering the environments in which the child has lived in the past and the desirability of maintaining the continuity of those environments." *Demski v Petlick*, 309 Mich App 404, 448-449; 873 NW2d 596 (2015). In terms of factor (d), the trial court noted: "The length of time the child has lived in a stable, satisfactory environment, it's been

---

[1] Plaintiff did not file a brief on appeal.

with [plaintiff]." The limited testimony showed that, during the course of the marriage, the children lived a sporadic life, living part of the time in Detroit, part of the time in Tennessee, and at least three years in Texas. At times plaintiff lived at a family shelter, while defendant lived at the house in Detroit. In addressing this factor, the trial court failed to consider the various environments in which the children lived in the past "and the desirability of maintaining the continuity of those environments." *Id.* Because the trial court did not explicitly address "the desirability of maintaining the continuity of those environments," *id.*, with plaintiff, it erred in finding that factor (d) favored plaintiff.

The trial court found in plaintiff's favor on factor (f), which "relates to a person's fitness *as a parent*." *Fletcher v Fletcher*, 447 Mich 871, 886-887; 526 NW2d 889 (1994). A parent's "questionable conduct is relevant to factor f only if it is a type of conduct that necessarily has a significant influence on how one will function *as a parent*." *Id.*at 887. As a result, the relevant inquiry is not moral superiority; rather "the question concerns the parties' relative fitness to provide for their child, given the moral disposition of each party as demonstrated by individual conduct." *Id.*

In its findings on factor (f), the court concluded that "[t]here's no comparison on the moral fitness of the parties," as defendant was "full of anger, revenge, braggadocio, and the best evidence of this is the position he's taken in this case." The trial court noted defendant was "obviously in no position, based on the evidence, to have custody of these children, [but] he's got the effrontery to tell the Court that I should award custody to him." The record supports the trial court's finding that factor (f) favored plaintiff. During trial plaintiff stated defendant "gets bullyish, and, for some odd reason, he used to wake up on the wrong side of the bed. And he took it out on the household." Examples of defendant's daily behavior included, according to plaintiff, "slamming doors, beating on things, walking back, stumbling back, yelling, you know, arguing with himself . . . ." "And once we all were disturbed, then he was at peace. He was cool then. He was all up moving around; everybody walking on eggshells." Further, plaintiff worked and supported the children during the marriage and maintained the household.

While the children were with defendant for a year, plaintiff noted she provided financial support and paid the water bill at the house. She purchased necessities for the children while she lived in Memphis. Further, while in Texas, one child "had a meltdown at school. He started throwing chairs at the assistant principle [sic]." "And they shipped him by school police to the hospital in Dallas[,] where they kept him for 48 hours." While there, he "started saying all kinds of things that his dad was doing to him and his siblings, saying that he choked one of the—the now seven-year-old with—choked him until he stopped breathing, and dropped him on the floor, and walked off and left him." Defendant countered these statements, noting the children were abused by plaintiff and her family in Memphis. Despite this conflicting testimony, the trial court's ruling on factor (f) was not against the great weight of the evidence. Specifically, the evidence provided by plaintiff showed how the "incidents would influence how [defendant] would function as a parent." *Demski*, 309 Mich App at 450. As a result, the trial court did not err when it weighed factor (f) in favor of plaintiff.

The trial court also found in plaintiff's favor regarding factor (i), the reasonable preferences of the minor children, whom the trial court considered "to be of sufficient age to express preference." MCL 722.23(i). From the brief findings placed on the record, some of which

supported plaintiff's position as to defendant's poor relationship with the children, we cannot conclude that the trial court's findings in favor of plaintiff on factor (i) were against the great weight of the evidence.

Further, defendant's argument that the *in camera* interview violated his due-process right lacks merit. This Court has held that "due process, in the context of custody disputes, permits in camera interviews of children for the limited purpose of determining their parental preference." *In re HRC*, 286 Mich App 444, 452; 781 NW2d 105 (2009). Defendant argues that the trial court erred because it used information obtained *in camera* for other best interest factors. However, allegations of abuse were already made by plaintiff, who described husband's behavior at home, and related what her son told medical professionals in Texas. As a result, any information obtained during the *in camera* interviews was merely confirmatory, and the trial court did not err when it found factor (i) favored plaintiff.

According to the trial court, factor (j) also weighed in plaintiff's favor, noting plaintiff expressed "her willingness to foster a reasonable relationship with their father." Although the record evidence shows that both parties took unilateral action—particularly moves across state lines—the trial court seemed to weigh this factor in favor of plaintiff because of her credibility, and defendant's lack of credibility. To the trial court, plaintiff appeared to be the parent who would more likely foster a relationship between the children and the other parent. The great weight of the evidence supports the trial courts finding under factor (j).

Lastly, defendant challenges the trial court's finding in plaintiff's favor for factor (k), regarding domestic violence. The record contains sufficient evidence supporting the trial court's finding. At trial, plaintiff described numerous incidents of verbal abuse by defendant, including physical threats of violence, even in front of some of the children. Further, plaintiff noted one of the children reported defendant's abuse while in a Texas hospital. Defendant argued plaintiff's family abused the children in Memphis. On appeal, defendant contends the conflicting testimony confirms the trial court's error; however, the trial court considered defendant's testimony and did not find it credible. This Court defers "to the trial court's determination of credibility." *Demski*, 309 Mich App at 453. As a result, the trial court's findings on this factor were not against the great weight of the evidence.

In sum, the trial court erred in its assessment of factor (d). Despite this error, the evidence supported the trial court's findings that the other factors weighed in plaintiff's favor. And, the trial court "need not give equal weight to all the factors, but may consider the relative weight of the factors as appropriate to the circumstances" *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). This Court has "disapprove[d] the rigid application of a mathematical formulation that equality or near equality on the statutory factors prevents a party from satisfying a clear and convincing evidence standard of proof." *Id*. (quotation marks and citation omitted). As a result, the trial court did not err when it found that it was in the children's best interests for plaintiff to have sole legal and physical custody of the children.

## III. PARENTING TIME

Next, defendant argues the trial court erred when it awarded him supervised parenting time.

-4-

## A. STANDARD OF REVIEW

"Orders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Shade v Wright*, 291 Mich App 17, 20-21; 805 NW2d 1 (2010) (quotation marks and citation omitted). "Under the great weight of the evidence standard, this Court should not substitute its judgment on questions of fact unless the facts clearly preponderate in the opposite direction." *Id*. at 21. "In child custody cases, [a]n abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Id*. (quotation marks and citation omitted; alteration in original).

## B. ANALYSIS

Under MCL 722.27a(1), "[p]arenting time shall be granted in accordance with the best interests of the child." This Court has explained: "Both the statutory best interest factors in the Child Custody Act, . . . and the factors listed in the parenting time statute, . . . are relevant to parenting time decisions." *Shade*, 291 Mich App at 31. In addition to the factors under the CCA, MCL 722.27a(7)(a)-(i) contain additional relevant parenting time factors. "Custody decisions require findings under all of the best interest factors, but parenting time decisions may be made with findings on only the contested issues." *Shade*, 291 Mich App at 31-32.

During trial plaintiff described defendant as abusive, necessitating police involvement. Further, while in Texas, one child expressed that defendant inflicted abuse on the children. Based on that and other similar testimony, and the children's *in camera* interviews, the trial court considered the reasonable likelihood of the children being abused during parenting time with defendant. See MCL 722.27a(7)(c) and (d). Based on this reasonable likelihood, the trial court found it was in the children's best interests for defendant to have supervised parenting time. The statute is clear: "A child has a right to parenting time with a parent unless it is shown on the record by clear and convincing evidence that it would endanger the child's physical, mental, or emotional health." MCL 722.27a(3). Based on a review of the record, "the facts [do not] clearly preponderate in the opposite direction" of the trial court's finding. *Shade*, 291 Mich App 20-21.

We do note, however, that the court ruled, and the Judgment of Divorce provides, that defendant shall have supervised parenting time at plaintiff's discretion, and that his parenting time could only be extended if plaintiff agreed. Plaintiff's discretion is not the only way in which defendant's parenting time can be extended, as the circumstances related to the children's best interests may change, allowing for "modification of custody and parenting time upon a showing of proper cause or change of circumstances." *Kuebler v Kuebler*, 346 Mich App 633, 677; 13 NW3d 339 (2023). Whether either party can later make "a showing of proper cause or change of circumstances" such that the parenting time provision should be modified is up to the court, not the parties (unless mutually agreed in writing). Therefore, although the parties can certainly agree to modify defendant's parenting time, when there is a disagreement either party may seek judicial relief.

## IV. PROPERTY DIVISION

Lastly, defendant argues that the trial court erred when it awarded plaintiff the Detroit and Jamaica properties, but all associated debts to defendant.

## A. STANDARD OF REVIEW

"In a divorce action, this Court reviews for clear error a trial court's factual findings on the division of marital property and whether a particular asset qualifies as marital or separate property." *Hodge v Parks*, 303 Mich App 552, 554-555; 844 NW2d 189 (2014). "Findings of fact are clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made." *Id*. at 555 (quotation marks and citation omitted). "This Court further reviews whether a trial court's dispositional rulings are fair and equitable in light of the trial court's findings of fact, but this Court will reverse only if definitely and firmly convinced that the disposition is inequitable." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

"The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Berger v Berger*, 277 Mich App 700, 716-717; 747 NW2d 336 (2008). "The trial court need not divide the marital estate into mathematically equal portions, but any significant departure from congruence must be clearly explained." *Id*. at 717. The following factors are to be considered wherever they are relevant to the circumstances of the particular case:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992).]

As *Sparks* emphasized, "while the division need not be equal, it must be equitable." *Id*. at 159. "The trial court must make specific findings regarding the factors it determines to be relevant." *Woodington v Shokoohi*, 288 Mich App 352, 363-364; 792 NW2d 63 (2010).

"[F]ault is clearly a proper factor to consider in the division of marital property." *Washington v Washington*, 283 Mich App 667, 675-676; 770 NW2d 908 (2009). "In determining fault as one of the factors to be considered when fashioning property settlements, courts are to examine the conduct of the parties during the marriage." *Welling v Welling*, 233 Mich App 708, 711; 592 NW2d 822 (1999) (quotation marks and citation omitted). However, fault may not be given "disproportionate weight." *McDougal v McDougal*, 451 Mich 80, 89-90; 545 NW2d 357 (1996) (quotation marks and citation omitted).

"Generally, assets earned by a spouse during the marriage are properly considered part of the marital estate and are subject to division, but the parties' separate assets may not be invaded." *Korth v Korth*, 256 Mich App 286, 291; 662 NW2d 111 (2003). MCL 552.401 carves out an exception to this rule, in which a trial court may invade a party's separate property "if it appears

from the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the property."

"The categorization of property as marital or separate, however, is not always easily achieved." *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010). "While income earned by one spouse during the duration of the marriage is generally presumed to be marital property, . . . there are occasions when property earned or acquired during the marriage may be deemed separate property." *Id*.

The trial court awarded the Detroit property to plaintiff, but all associated debt to defendant. In doing so, the trial court accepted plaintiff's testimony that she bought this property with money from her student loans, and it was in her name. The fact-finder is best suited to consider a witness's credibility and demeanor, and "an appellate court should not conduct an independent review of credibility determinations." *Smith v Anonymous Joint Enterprise*, 487 Mich 102, 113, 130 n 64; 793 NW2d 533 (2010).

As a result, we must defer to the trial court's finding the house was purchased with money from plaintiff's student loans and was in her name. There is no evidence in the record that the student loans were comingled with marital property before the house was purchased. Further, the trial court found plaintiff contributed to the marital estate, and defendant did not. However, the house was purchased during the marriage, and "[t]he actions and course of conduct taken by the parties are the clearest indicia of whether property is treated or considered as marital, rather than separate, property." *Cunningham*, 289 Mich App at 209. The parties lived together in the house during the marriage, and defendant testified that he extensively renovated it. Further, defendant continued to reside in the house when plaintiff left with the children, a period of approximately three years. The trial court failed to make findings on all the relevant factors, suggesting that awarding to plaintiff the house and any equity in it was inequitable, at least in the absence of an explanation why defendant's renovations (if any) and contributions while living in the house during the entire marriage does not garner defendant *any* interest in the house. See *Sparks*, 440 Mich at 159-160.

The trial court also awarded plaintiff the entirety of the Jamaica property, termed by the court as the "mountaintop property." As an initial matter, there is no demonstrative evidence in the record that the Jamaica property exists and is in defendant's name, with the only evidence that of plaintiff's testimony that defendant used her money to buy the land, and that she saw the deed. As explained, the trial court found defendant's testimony lacked credibility, and awarded plaintiff the Jamaica property, finding her claims about the property credible.

"A party's attempt to conceal assets is a relevant consideration, but it is only one of many facts that the court must weigh. Further, a judge's role is to achieve equity, not to 'punish' one of the parties." *Sands v Sands*, 442 Mich 30, 36; 497 NW2d 493 (1993). The trial court erred because it did not make findings on all the relevant considerations regarding the Jamaica property. The trial court awarded plaintiff the Jamaica property without knowing definitively whether defendant actually owned it, the size and location of the property, or its present value. Plaintiff opined the property was in defendant's name because she saw documents, but did not present the deed or any other means of confirming her statements to the trial court. Simply put, the record does not contain sufficient information to allow this Court (or the trial court) to determine whether the purported

Jamaica property was marital or separate, its value, and whether the trial court's distribution was equitable.

Further, the trial court's awarding of *all* assets to plaintiff and *all* debt to defendant appears to be inequitable. "The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Berger*, 277 Mich App at 716-717. "The trial court need not divide the marital estate into mathematically equal portions, but any significant departure from congruence must be clearly explained." *Id*. at 717. Here, there was no value placed on either property, and no finding that the Jamaica property even existed. Whether, and to what extent, either of these properties have value, must be determined before engaging in any distribution of that property. As a result, we reverse the trial court's awarding to plaintiff of the entire value of the two properties, and remand to the trial court for it to make findings on the value of the Detroit and Jamaica properties, and on the extent of any distribution of those properties and associated debt.[2]

The judgment is affirmed in part, vacated in part, and the matter is remanded for further proceedings. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ David H. Sawyer

---

[2] We recognize that plaintiff has appeared *in propria persona* throughout these proceedings, and that the parties presented very little evidence during trial, and that the trial court did the best that it could with what it had. And though this evidentiary deficiency may arise again, the court can make note of how that affected its decision.